UNITED STATES of America,
Appellant,

v.

Henry Earl PALMER, Registrar of Voters of East Feliciana Parish, Louisiana, and the State of Louisiana, Appellees.

UNITED STATES of America,
Appellant,

v.

Fletcher HARVEY, Registrar of Voters of West Feliciana Parish, Louisiana, and the State of Louisiana, Appellees.

Nos. 21646, 21647.

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1966.

Rehearing Denied March 16, 1966.

Harold H. Greene, James L. Kelley, Attys., Dept. of Justice, Washington, D. C., John Doar, Acting Asst. Atty. Gen., Louis C. LaCour, U. S. Atty., Howard A. Glickstein, Attorney, Department of Justice, Washington, D. C., for appellant.

Leon A. Picou, Jr., St. Francisville, La., Harry J. Kron, Jr., Asst. Atty. Gen., Baton Rouge, La., for appellees.

Before WHITAKER, Senior Judge,* and WISDOM and THORNBERRY, Circuit Judges.

WISDOM, Circuit Judge:

In separate actions, October 29, 1963, and March 26, 1964, the United States filed complaints against Harvey, Registrar of Voters in West Feliciana Parish, and against Palmer, Registrar of Voters in East Feliciana Parish, Louisiana. The complaints alleged that Harvey and

* Of the U. S. Court of Claims, sitting by designation.

Palmer, as registrars, had deprived Negroes of their right to register and vote, in violation of 42 U.S.C. § 1971(a), (c), (d). In November 1963, a three-judge court declared the Louisiana interpretation test unconstitutional and enjoined the use of the citizenship test in the Felicianas and nineteen other parishes. United States v. State of Louisiana, E.D. La., 225 F.Supp. 353, aff'd, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709. In December 1963, the two defendants closed their offices to Negro and white applicants for registration. The United States moved for preliminary injunctions enjoining Harvey and Palmer from (a) failing to register Negroes during hours established by Louisiana laws for open registration, (b) from failing to receive and expedite registration, and (c) from otherwise interfering with the right of Negroes to register. The district court denied the relief referred to in (a) and (b), and granted (c) in part. The United States appealed. On motion of the United States, this Court granted an interlocutory injunction pending appeal that, in effect, granted the injunctive relief denied below.

The registrars' excuses are a patent sham.

■ First, they say that they had to close their office because of their delimma: their duty under state law to use all prescribed tests, including the citizenship test, conflicted with their duty under the order issued in United States v. State of Louisiana. But there was no dilemma. When a state law conflicts with a valid federal law or with the exercise of federal authority created by or resting upon the Constitution, the Supremacy Clause of Article VI requires the State to give way to the federal action. "The states," John Marshall declared, "have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that su-premacy which the constitution has declared." McCulloch v. State of Maryland, 1819, 4 Wheat. 316, 4 L.Ed. 579. Again, in Gibbons v. Ogden, 1824, 9 Wheat. 1, 21, 6 L.Ed. 23 the Chief Justice wrote: When "a law, passed by a state in the exercise of its acknowledged sovereignty comes into conflict with a law passed by Congress * * * [in] every such case, the Act of Congress * * * is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it."

■ Second, in a parish where most white persons of voting age are registered and most Negroes of voting age are not registered, we cannot take seriously a registrar's wry defense that since the office was closed to applicants of both races, there was no discrimination. "[T]here is no greater inequality than the equal treatment of unequals." Dennis v. United States, 339 U.S. 162, 184, 70 S.Ct. 519, 526, 94 L.Ed. 734, (Frankfurter, J.).

■ Third, the registrars say that without the citizenship test they have no means of determining an applicant's qualifications to register. This argument too is totally without merit. Louisiana law prescribes a number of qualifications. The registrars were free to administer any state tests not inconsistent with their duty to obey the order issued in United States v. State of Louisiana and any federal laws relating to voting rights. The closing of the registration offices was patently a violation of the "freezing" provision of the Civil Rights Act of 1964, Section 101(a) (2) (A) and 42 U.S.C. § 1971(a) and (b).

■ In determining the appropriate relief we turn to United States v. Ward, 5 Cir., 1965, 349 F.2d 795 and United States v. Ramsey, 5 Cir., 1965, 353 F.2d 650. Both of these cases were tried and decided by the district courts before enactment of the Voting Rights Act of 1965. In both cases, racial discrimination in the voter registration process was proved, but the district courts denied the government's requests for "freezing"

relief. See United States v. Duke, 5 Cir. 1963, 332 F.2d 759. This Court, after noting that the district courts had erred in denying freezing relief, framed decrees to be entered by the district courts, spelling out the standards and procedures to be followed by the registrars in accordance with the Voting Rights Act of 1965. In this case we too conclude that a freeze order is necessary to provide adequate relief and, in the interest of uniformity, we suggest that the district court enter an order substantially along the lines of the proposed order set forth in the Appendix to this opinion. As the Court said in United States v. Ward, 349 F.2d at 805:

> [G]ood administration suggests that the proposed decree be indicated by an Appendix, not because of any apprehension that the conscientious District Judge would not faithfully impose every condition so obviously implied, but rather because of factors bearing upon administration itself. It is not possible, or even desirable, of course to achieve absolute uniformity. But in this ever growing class of cases which have their genesis in unconstitutional lack of uniformity as between races, courts within this single circuit should achieve a relative uniformity without further delay. We have come to this in school discrimination cases. * * * Voter registrars should come to learn that when the cases are tried on the application for permanent injunction and the facts establish a pattern or practice, the District Court must so find. Next, the Judge must make the finding to set in operation the § 1971(e) machinery. Next, he must enter a decree which, through suitable freeze provisions, effective for an adequate period of time, will assure that the evils of past discrimination be radicated before new and more stringent state provisions may be exacted of Negro applicants.

We hold that the district court erred in denying the preliminary injunction the United States sought. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

### APPENDIX

### FINAL DECREE

I. It is ordered, adjudged and decreed by the Court that the defendants, and each of them, and their agents, employees, representatives, and successors in office shall be and are hereby restrained and enjoined from engaging in, or performing, directly or indirectly, any and all of the following acts:

a. Engaging in any act which would delay, prevent, hinder, or discourage Negro citizens in East [West] Feliciana Parish, Louisiana, on account of their race or color, from applying for, and becoming registered voters;

b. Failing to keep the office of the Registrar of Voters for East [West] Feliciana Parish open for registration at all times required by Louisiana law, particularly Title 18, Section 32 of the Louisiana Code; failing or refusing to conduct registration and to receive and process expeditiously applications for registration to vote in East [West] Feliciana Parish, Louisiana, while the office is open;

c. Engaging in any deliberate slowdown of voter registration or placing any improper impediments in the way of applicants attempting to register to vote.

II. The Court takes notice of the fact that the United States Attorney General and the Director of the Census have made and published on August 7, 1965 (30 Fed.Reg. 9897), the determinations which invoke the provisions of Section 4 of the Voting Rights Act of 1965, and related provisions (Pub.L.No. 89–110, 89th Cong., 1st Sess., 79 Stat. 437, 42 U.S.C.A.

§ 1973b) in the State of Louisiana. It is further ordered that the defendants, their agents, officers, employees, and successors in office be and each is hereby enjoined, for a period of five years after the entry of any final judgment of any court of the United States determining that denials or abridgments of the right to vote on account of race or color through the use of any "test or device" as defined in Section 4(c) of the Voting Rights Act of 1965 have occurred anywhere within the State of Louisiana, and in any event until the United States District Court for the District of Columbia has determined that no such test or device has been used during the five years preceding the filing of the action for the purpose of denying or abridging the right to vote on account of race or color, from (a) requiring any applicant for voter registration in East [West] Feliciana Parish, as a condition to such registration, to take or pass any test of literacy, knowledge, or understanding or to comply with any other test or device as defined in Section 4(c) of the Voting Rights Act of 1965, i. e., any requirement (including the "good character" requirement specified in Article VIII, Section 1(c) of the Louisiana Constitution and Title 18, Section 32, of the Louisiana Code, except to the extent that these provisions permit disqualification for conviction of a felony) that he (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class, or (b) rejecting any applicant for voter registration in East [West] Feliciana Parish for failure to comply with any such requirement.

III. It is further ordered that for the period specified in paragraph II, except to the extent that the State of Louisiana has obtained a declaratory judgment under Section 5 of the Voting Rights Act that a qualification, prerequisite, standard, practice or procedure enacted subsequent to November 1, 1964, does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or has submitted such qualification, prerequisite, standard, practice or procedure to the Attorney General of the United States and the Attorney General has not interposed an objection within sixty days after such submission, the defendants, their agents, officers, employees, and successors in office are enjoined from determining the qualifications of citizens in East [West] Feliciana Parish, Louisiana in any manner or by any procedure different from or more stringent than the following:

(a) He is a citizen and will have attained the age of 21 years prior to the next election;

(b) He has resided in the State for one year, the Parish six months and the Precinct three months prior to the next election;

(c) He is not disqualified by reason of conviction of a disqualifying crime.

IV. This decree does not modify or supersede the obligations imposed upon the defendants by the decree entered against them in the case of United States v. Louisiana, Civ.A.No.2548, which requires them to make monthly reports to the court concerning voter registration and to make available voter registration records for inspection and photographing by agents of the plaintiff at all reasonable times.

V. Jurisdiction is retained of this cause for all purposes and especially for the purpose of issuing any and all additional orders as may become necessary or appropriate for the purposes of modifying and/or enforcing this order.

VI. Costs in this Court are awarded to Plaintiff and taxed against the Defendants.